# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JAMES L. JONES,

        **Plaintiff,**

v.                                     **Case No. 8:11-cv-611-T-30TBM**

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

### I.

Plaintiff was forty-five years old at the time of his administrative hearing in September 2009. He stands 6 feet 1 inch tall and weighed 195 pounds according to his administrative filings. Plaintiff has a ninth grade education. His past relevant work was as a fiberglass machinist, grocery store stocker, and grounds worker. Plaintiff applied for Social Security disability benefits and Supplemental Security Income payments in October 2007,

alleging disability as of August 6, 1997, by reason of a seizure disorder. Plaintiff's

applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an

Administrative Law Judge (ALJ). The Plaintiff was represented at the hearing by counsel and

testified in his own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that he is unable to work due to seizures. Plaintiff was

involved in an automobile accident in June or July of 1997 in which he struck his neck. He

has had seizures since then.[1] He tried to work after the accident, but was unable to because of

daily seizures. Plaintiff explained that he could be standing talking to someone and then pass

out and start shaking, urinate on himself, and bite his tongue. He did not know he was having

a seizure until the paramedics woke him up. He was hospitalized several times due to his

seizures. Plaintiff claimed he still has seizures "quite a bit," but he has been taking

medication for about ten years. The medication helps control the seizures to the extent that he

does not pass out because of them. Plaintiff denied problems taking his anti-seizure

medication, but testified that he was unable to take a certain prescription medication because

he was allergic to it. Plaintiff also has seizures in the middle of the night and does not know it

until he awakes and he has urinated in his sleep. By his account, he still experiences seizures

daily that last five to ten minutes. He has to be somewhere safe because he needs to just sit

there and shake until he comes out of it. Plaintiff does not always go to the hospital when he

---

[1]Plaintiff later testified that he also had seizures when he was a child, but he claims
they were not as serious.

has a seizure because sometimes he can lie down until it passes. According to Plaintiff, his most recent seizure was about a month before the hearing.

As for other medical problems, Plaintiff testified he experiences dizziness, memory difficulties, headaches, neck pain, back pain, and arm pain. He has problems lifting anything because his arms hurt. He also has difficulty holding anything for a long time and will drop things. However, he is able to pick up small objects like change or a paperclip. Plaintiff is right-hand dominant.

Plaintiff has difficulty sitting for more than two to three hours and his legs cramp up if he sits longer than that. He can walk or stand for about an hour before needing to sit. He is only able to stand, however, if there are not a lot of people around; otherwise he becomes anxious. When Plaintiff started having seizures, he also began experiencing anxiety, especially in crowds. He denies seeking treatment with a counselor or therapist for mental problems.

As for daily activities, he Plaintiff testified that he watches television or lies down if he is tired. His medications make him dizzy and drowsy. He lies down for two to three hours until he feels better. Plaintiff is unable to do any chores around the house because he gets tired too quickly. He does not cook or do yard work. Plaintiff does not have a driver's license and does not drive.

Plaintiff last worked briefly in 2000, but was let go because he kept falling down almost daily. One time he hit his head and another time he knocked out two front teeth. According to Plaintiff, he falls "quite a bit." (R. 41-62).

Next, the ALJ called Joyce Courtright, a vocational expert (VE), to testify. The VE testified upon a hypothetical assuming an individual of Plaintiff's age, education, and work experience who could lift up to twenty pounds occasionally, carry up to ten pounds frequently, stand or walk for approximately six hours, and sit for two hours, but could not climb or have exposure to hazards such as moving machinery or extreme temperatures. Based on this hypothetical, the VE opined that there would be jobs available in the national and local economy that such individual could perform, including small products assembler, merchandise marker, and cleaner. If the hypothetical individual was limited to sedentary work, there would be jobs available in the areas of assembly, product inspection, and order and compliance. The VE testified that jobs in these areas included final assembler, lenses block gauger, and food and beverage order clerk, each of which are unskilled with an SVP of two. With the added limitation that the individual could not stoop or bend, these sedentary jobs would still be available. However, if the hypothetical individual could only lift or carry five pounds occasionally; stand or walk for two hours; sit for two hours; with no climbing, balancing, stooping, crouching, kneeling, or crawling; and the same environmental limitations as previously stated, there would be no full-time employment available. Similarly, if the individual had to lie down two to three hours per day or would miss work at least two times per month due to fatigue, seizures or dizziness, no competitive employment would be available. (R. 62-67). At the conclusion of the administrative hearing, the record was left open to allow counsel time to make sure that the medical record included the records dating back to Plaintiff's accident.

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of December 15, 2009, the ALJ determined that while Plaintiff has a severe impairment related to a seizure disorder, he nonetheless had the residual functional capacity to perform light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that while Plaintiff could not perform his past work, he could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 24-33). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

6

III.

The Plaintiff raises six claims on this appeal.[2]  As stated by the Plaintiff, they are as follows:

(1) Remand and Reversal Demanded Pursuant to Sentence 6 and in the Alternative that the Record Be Supplemented;

(2) Remand and Reversal Demanded with an Immediate Award of Benefits – Non-Recognition of Impairments;

(3) Remand and Reversal Demanded with an Immediate Award of Benefits – Improper Weight Given to Treating Doctor's Opinion;

(4) Remand and Reversal Demanded with an Immediate Award of Benefits – New Material Evidence;

(5) Remand and Reversal Demanded with an Immediate Award of Benefits – Hypothet to VE is Incomplete; and

(6) Remand and Reversal Demanded with an Immediate Award of Benefits – Improper Standard Utilized.

(Doc. 13).[3]

---

[2]In his brief, Plaintiff concedes that given his date last insured of December 31, 1999, he lacks evidence to establish entitlement to disability benefits.  (Doc. 13 at 1).  Accordingly, insofar as the ALJ denied his claim for the same, the decision is appropriately affirmed.

[3]At the outset, it is worth noting that the court's Scheduling Order provides that the Plaintiff must identify with particularity the discrete grounds upon which the decision is challenged and any such challenge "must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards.  Any contention for which these requirements are not met is subject to being disregarded for insufficient development." (Doc. 7 at 1-2).  Plaintiff's brief is generally lacking in citations to the administrative record,

Starting with Plaintiff's last claim first, he states, "[t]he ALJ, at page 31 of his opinion, appears to say that the standard in determining disability is whether Mr. Jones would be totally disabled." According to Plaintiff, that is not the law. Rather, he urges that the proper standard is whether an individual has the residual functional capacity (RFC) to perform substantial gainful activity, that is, work for profit, on a sustained basis, eight hours a day, five days a week. Applying this standard and given the medical opinions that he cannot drive and operate machinery or be around heights, Plaintiff urges there is serious doubt that he could perform work on a sustained basis. (Doc. 13 at 13-14).

I find no merit to this contention. When the cited language is read in context, and in light of the whole of the decision, there is no demonstration that the ALJ applied an incorrect standard in determining whether Plaintiff was disabled. First, the statement concerning total disability at page 31 is part of a summation by the ALJ for his conclusions concerning Plaintiff's RFC. It states in full that:

> In sum, the above residual functional capacity assessment is supported by the longitudinal treatment record, the effectiveness of the claimant's treatment and medication regimen, as well as the opinions of the State agency, consultative examining, and treating physicians. The claimant's seizure disorder does provide limitations in his ability to work around hazards, temperature extremes, and to climb as evidenced by the medical evidence of record and his testimony at the hearing. The claimant's abilities to function independently coupled with the success of his treatment regimen belie his claims of total disability. I further note the inconsistencies of the claimant's testimony and the documented medical evidence regarding the frequency of the claimant's seizures and his non-compliance with medication

_____

both as it relates to the facts and to the medical evidence and opinions.

> and treatment instructions (Exhibit 1F). The lack of objective medical evidence to indicate seizures and side effects of the severity alleged by the claimant further undermines the claimant's allegation of total disability. However, recognizing the claimant's limitations due to medication side effects and seizures, I have reduced the claimant's residual functioning capacity to light work with additional restrictions.

(R. 31). This statement, by its plain terms, in no way reflects the application of an improper standard. This is especially so when it is considered in the light of the ALJ's explication of the issues and the applicable standards for evaluating the same set forth earlier in the decision. *See* (R. 24-26). Among other considerations noted there and in connection with the RFC assessment under 20 C.F.R. §§ 404.1520(e) and 416.920(e), the ALJ states that, "[a]n individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." (R. 25). And, in support, the ALJ cites to SSR 96-8p, the same administrative ruling cited by Plaintiff. In these circumstances, I find Plaintiff's claim that the ALJ employed the wrong standard in deciding his claim is without merit.

Plaintiff's second claim appears to center on his contention that the ALJ erred in failing to recognize the separate, non-exertional impairments of dizziness and weakness, which arise from his seizures. Since the effect of these impairments on his ability to work would be more than minimal and because without such recognition the ALJ could not have considered all his impairments in combination as required, Plaintiff contends that a remand is necessary for proper analysis of all his impairments. (Doc. 13 at 5-7).

In response, the Commissioner urges that substantial evidence supports the ALJ's finding as to Plaintiff's severe impairments. The Commissioner notes that the ALJ considered Plaintiff's history of head trauma (despite the lack of supporting evidence) and seizures, and found the seizure disorder to be a severe impairment at step two of the evaluation process. The Commissioner concedes the ALJ did not identify dizziness and weakness as separate impairments, but urges there is nonetheless no error at step two given the ALJ's determination that Plaintiff suffered at least one severe impairment. The Commissioner also urges that the decision reflects no error in this regard at the remaining steps of the evaluation process. Thus, the decision reflects that the ALJ considered Plaintiff's impairments in combination at step three and Plaintiff's subjective complaints were considered in connection with the assessment of his RFC at steps four and five.[4]  (Doc. 14 at 4-6).

Initially, insofar as Plaintiff suggests error at step two of the evaluation process dictated by the regulations, the claim is without merit. At step two, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. If the claimant does not have an impairment or combination of impairments which significantly limits his ability to do basic work activities, then he is not disabled. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)).  In application, this inquiry is a "threshold" inquiry.  It allows only claims based on the slightest

---

[4]The Commissioner notes that the ALJ discounted Plaintiff's testimony to the extent that Plaintiff claimed he was disabled from all work and did so primarily due to the lack of medical support.  Here, Plaintiff makes no challenge to the ALJ's credibility determination.

abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). However,

". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987).

Here, the ALJ's finding that Plaintiff suffers a severe "seizure disorder" satisfies step two. Furthermore, as pointed out by the Commissioner, the ALJ expressly indicated that he had considered Plaintiff's impairments in combination and this consideration included Plaintiff's claims of dizziness and weakness in connection with Plaintiff's subjective claims. Indeed, a fair reading of the decision reflects the ALJ's consideration of these alleged symptoms, to the extent he found them to exist, at each of the remaining stages of the evaluation process. Thus, the ALJ expressly noted the Plaintiff's claim of frequent seizures with dizziness and loss of consciousness. (R. 27-28). And, he expressly noted Plaintiff's claim that he could not lift more than five pounds. *Id.* In addressing the same, the ALJ credited Plaintiff with a condition that could give rise to his symptoms but not to the extent claimed. (R. 28). The primary reason for discounting Plaintiff's subjective complaints was the lack of support in Plaintiff's medical records. More particularly, the ALJ stated:

> The claimant claims debilitating seizures that prevent him
> from engaging in any substantial gainful activity. However,
> the medical evidence of record indicates that the claimant's
> seizures have responded well to conservative prescription
> medication (Exhibits 3F, IF, 7F). The claimant testified at
> the hearing that he experienced seizures at least once a day,
> but the medical evidence of record does not appear to reflect
> such frequency (Exhibits 7F, IF). I also note that multiple

11

> physicians opined that the claimant was capable of working as long as hazards and driving were avoided (Exhibits 4F, 6F, 3F, IF). Though these inconsistencies reflect negatively on the claimant's credibility, I have given the claimant's assertions all due consideration and have addressed his limitations due to his seizures and associated medication side effects in the claimant's residual functioning capacity.

(R. 28). There followed a review of the medical history, including that of Plaintiff's two treating doctors, Lalitha E. Jacob, M.D., and Harish J. Patel, M.D., (Exs. 1-2F, 7F), which reflect on both the claims of dizziness and weakness. By my consideration of these records, neither supports the conclusion that Plaintiff's seizures were as frequent and debilitating as claimed or that such prevented him from substantial gainful activity especially when he took his medication and avoided alcohol. These records also fail to suggest that dizziness or purported weakness should be considered distinct from the seizure disorder. Given the ALJ's detailed accounting of the medical evidence, I cannot agree that he ignored the evidence of dizziness or the claim of weakness or that either symptom is not otherwise adequately accounted for by the ALJ's conclusion that Plaintiff suffered a seizure disorder.[5] Significantly,

---

[5]While Plaintiff criticizes the ALJ's lack of reliance on the reports of Dr. Patel, even those reports undermine his argument. For example, in June 2009, while Dr. Patel reported Plaintiff was positive for vertigo, dizziness, and seizures, he was negative for memory loss, headaches, stroke, dementia, multiple sclerosis, and other neurological conditions. (R. 327). He also noted that Plaintiff was negative for muscle weakness. *Id.* As Dr. Patel described Plaintiff, he "is a 45 year old well-developed, well-nourished, well-groomed African-American male who is in no acute distress. Patient is alert, oriented to place and person, and is cheerful. Speech is clear. Memory: immediate, recent, and remote is good. Recall: one minute and five minutes is good. Calculations are good. Digit span forward and backward is good. Attention is good. Concentration is good. Naming of objects is good. Spontaneous speech is good." (R. 327). And, contrary to Plaintiff's contention, a fair reading of this doctor's reports as they relate to Plaintiff's functioning suggest that Plaintiff was not wholly disabled by his recognized seizure disorder or any related symptom.

Dr. Jacob's notes also undermine Plaintiff's claim that he is rendered disabled from all

Plaintiff raises no claim related to the ALJ's credibility findings or demonstrates that such is unsupported by the substantial evidence. Plaintiff is not entitled to relief on this claim.

By the third claim, Plaintiff contends that the ALJ failed to give proper weight to the opinion evidence from Harish Patel, M.D., a treating neurologist. According to Plaintiff, the ALJ erred in discounting the functional opinions of Dr. Patel (R. 333-34) on the basis of contrary evidence from Dr. Jacob and Fathy Saad, M.D., a one-time consulting internist. He urges that Dr. Jacob was unaware that Dr. Patel had seen Plaintiff in 2001 at the time of an automobile accident and apparently both Jacob and Saad were unaware of a prior head injury. As for Dr. Jacob, Plaintiff contends that she had insufficient data and as for Dr. Saad, as a consulting internist his opinion was insufficient to overcome the opinion of the treating neurologist. (Doc. 13 at 7-9).

The Commissioner responds generally that Dr. Patel's June 2009 opinion that Plaintiff was totally disabled and his RFC assessment in September 2009 were properly discounted by the ALJ on the basis of the whole of the medical evidence. He urges that the opinion on disability is entitled to no particular deference as such determination is one left to the Commissioner under the regulations. He urges further that the opinions from Dr. Patel were conclusory, in conflict with examining and imaging records, and in conflict with the

work by reason of his seizure disorder. In particular, the records undermine the frequency and persistence claimed by Plaintiff. While Plaintiff complains that Dr. Jacob was uninformed about the head injury in 2001, if that is so, it is the fault of Plaintiff. As this doctor's records reveal, Plaintiff's seizures related to a closed head injury sustained as a child. *See* (R. 226-32). Plaintiff's reporting on this is inconsistent. On another occasion, Plaintiff reported a history of seizures and a fall 2007 head injury. (R. 305). In any event, neither the records from Dr. Jacob nor Dr. Patel support separate impairments related to dizziness, which is only occasionally noted, or weakness apart from any seizure episodes.

evidence from other doctors. The Commissioner notes that they also conflicted with Dr. Patel's own statement in August 2009 that Plaintiff could work as long as he avoided hazards and climbing and with Plaintiff's self-reports indicating a functional capacity greater than that assessed by Dr. Patel. In sum, the Commissioner urges that the ALJ stated adequate good cause to discount the opinions of Dr. Patel. (Doc. 14 at 12-15).

In this circuit, when considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.[6] *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Here, I find that the ALJ has stated adequate good cause for discounting the RFC assessment given by Dr. Patel in September 2005 (333-34). In discounting his assessment, the ALJ stated:

> In September 2009, the claimant's physician Dr. Harish Patel issued an opinion statement regarding the claimant's capabilities and limitations due to his seizure disorder (Exhibit 8F). Dr. Patel opined that the claimant could lift up to 5 pounds and could stand and walk for 2 hours during an 8 hour work day. The claimant was further noted to be able to

---

[6]Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440.

sit for 2 hours total and to be able to sit for 1 hour without interruption. The claimant was further restricted from climbing, balancing, stooping, crouching, kneeling, and crawling, and noted to have limitations in reaching, handling, fingering, pushing/pulling, seeing and speaking. Dr. Patel noted that the claimant should be restricted from heights, heavy machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibrations due to his condition. The claimant was noted to suffer from seizures, headaches, and memory loss. Dr. Patel further noted that the claimant had these restrictions when he began treating the claimant in March 2001 (Unmarked Exhibit). In accordance with SSR 96-2p, I have considered but reject Dr. Patel's opinion that the claimant has such significant limitations. Dr. Patel's assessment is not well supported by the medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial medical and non-medical evidence of record and is therefore not entitled to controlling weight. I conclude that Dr. Patel's opinion is inconsistent and accordingly give[] it minimal evidentiary weight.

(R. 29-30). Considering the ALJ's review of the whole of the medical record, these reasons for discounting Dr. Patel's opinions are supported and offer an adequate basis for giving the RFC assessment little weight. Thus, as noted by the ALJ, objective evidence in the form of a CT scan and EEGs during Dr. Jacob's treatment were essentially normal. An EEG in 2009 likewise revealed normal activity. A CT scan of the brain at Bayfront Medical Center in March 2008 noted no abnormality. (R. 305-06). As discussed below, while Plaintiff urges on the basis of "new" evidence that a negative EEG finding may be explained by the fact that Plaintiff could suffer from a type of seizure activity which does not necessarily yield positive EEG results, such may or may not be the case, and presumably Dr. Patel would not have ordered the exam had he thought it a waste of time. Furthermore, such does not explain CT scans of the brain showing no abnormality. Beyond the objective evidence, Dr. Patel's RFC is

15

inconsistent with the clinical findings by Dr. Jacob and the results of a consultative evaluation

by Dr. Saad.  Dr. Jacob's notes are reasonably and fairly read to indicate that Plaintiff does not

suffer a wholly disabling condition by reason of seizures.  (R. 226-32).  Furthermore, he

treated Plaintiff over a period of years and was of the express opinion that Plaintiff was

capable of work so long as it involved no driving or work at heights.  (R. 228).  While the

opinion of Dr. Saad is generally entitled to less weight than a treating doctor, his physical

examination of Plaintiff merited consideration and it too is inconsistent with the extreme

limitations imposed by Dr. Patel.  *See* (R. 235-40).  For example, his musculoskeletal

examination would completely undermine a lifting/carrying limitations for five pounds, as

would his neurologic observations.  *Id*.  Dr. Patel's own notes appear to contradict notations in

the RFC assessment as well.  Thus, in June 2009, examination of the spine, neck and

extremities was essentially normal apart from some limitation in range of motion.[7]  Similarly,

the examination of cranial nerves, the sensory examination, cerebellar examination and gait

were normal.  The doctor noted no memory loss and no headaches.  (R. 327-28).  A fair

reading of this treatment note reveals that it is inconsistent with the RFC prepared in

September 2009.  Again, in August 2009, the doctor reported that Plaintiff was in compliance

and improving.  Physical examination revealed similar normal findings.  Dr. Patel's

recommendations suggested only that Plaintiff not operate machinery, work/play in dangerous

---

[7]Plaintiff discusses treatment by this doctor in 2001 in his brief.  Despite the fact that the record was left open to allow additional filings, no such evidence is included in the medical record.

places, with dangerous surfaces or objects in or around water.  (R. 330).  And as noted, Plaintiff himself claimed greater functional capacity.

As set forth above, the ALJ is tasked to evaluate the evidence and resolve conflicts in the same.  Where the conclusions reached in doing so are supported by substantial evidence, they should be affirmed.  Here, the whole of the medical evidence supports the ALJ's conclusion that the RFC assessment by Dr. Patel overstates Plaintiff's limitations and should be discounted.

By his fifth claim, Plaintiff complains that the imprecision of the ALJ's analysis resulted in an incomplete hypothetical to the VE.  Thus, Plaintiff contends that by the doctors' accounts, he should not drive because of his seizures.  However, the ALJ's RFC determination did not include such limitation.  Nor did the hypothetical questions the ALJ posed to the VE.  Plaintiff also contends that the ALJ just employed only the general reference to avoiding hazards, moving machinery and unpredicted heights rather than specifying particular limitations for consideration by the ALJ.  (Doc. 13 at 11-13).

On this claim, it is worth noting that the same counsel who raises this claim represented Plaintiff at the administrative hearing and also failed to make any inquiry about the vocational import of a limitation for no driving.  Nor did counsel complain or otherwise question the VE concerning the limitation for no hazards, moving machinery and unpredicted heights.  The general rule in this circuit is that "[a]n argument not raised in an administrative hearing cannot be raised on appeal."  *See Alacare Home Health Servs., Inc. v. Sullivan*, 891 F.2d 850, 855 n. 5 (11th Cir. 1990) (citations omitted); *see also Meanel v. Apfel*, 172 F.3d

1111, 1115 (9th Cir. 1999) (holding that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal").  On this basis alone, it would appear that counsel has waived the claim on behalf of his client.  However, even on its merits, the claim fails.

Here, the VE testified on hypothetical questions which limited Plaintiff to light exertional jobs involving no climbing, avoiding all exposure to hazards such as moving machinery or unprotected heights, and constant exposure to heat.  Even with such limitations the VE, employing the Dictionary of Occupational Titles (DOT) as a reference, identified the jobs of small parts assembler, DOT # 739.687-030, merchandise marking, DOT # 209.587-034, and cleaner, DOT # 323.687-010, as work available and allowing for such limitations.  A consideration of these job types as classified by the DOT indicates that none require driving.  Thus, while there was no express limitation for driving, such omission appears entirely immaterial to the hypothetical and the vocational opinion of the VE.  Here, the ALJ relied on the VE's testimony for his vocational decision noting that such was consistent with the DOT.  (R. 32).  In these circumstances, the Plaintiff wholly fails to demonstrate that a limitation for driving should have been included in the hypothetical or that such was relevant to the vocational decision.

As for the ALJ's limitation for no climbing, and avoiding all exposure to hazards and no exposure to extreme heat, Plaintiff claims the ALJ should have described with particularity the hazards referred to.  I disagree.  Here, the ALJ had rejected many of the the over-the-top limitations listed by Dr. Patel and Plaintiff makes no showing of error in this or that any one of

those limitations should have been included in the hypothetical questions to the VE. Nor does he offer any explnation why counsel did not make the unspecified inquiry he here urges. Furthermore, a plain reading of the hypothetical indicates that the ALJ expressly excluded <u>all</u> exposure to hazards and extreme heat. (R. 63). Under such hypothetical, no vocationally relevant hazard was excepted and further explication by the ALJ was unnecessary, especially with an experienced VE such as this one. Finally, Plaintiff makes no showing that any of the jobs identified by the VE under the pertinent hypothetical posed would expose him to such a prohibited hazard for the jobs identified. In the circumstances, a remand is unwarranted.

As for Plaintiff's "new evidence" claims, he seeks remand on his first claim pursuant to sentence six of 42 U.S.C. § 405(g) for consideration by the Appeals Council of allegedly new evidence. Counsel claims that such evidence was submitted to the Appeals Council but not apparently not made a part of this record. He urges that such evidence was new because it did not exist at the time of the hearing and material given that the ALJ used the lack of EEG evidence as grounds to deny the claim. (Doc. 13 at 2-5). In his fourth claim, Plaintiff urges that if there is no remand under sentence six, the new evidence must be considered under sentence four of Section 405(g). (Doc. 13 at 9-11).

In response, the Commissioner urges that insofar as the Plaintiff argues that the Appeals Council erred in denying review, the claim is without merit because the substantial evidence as a whole supports the Commissioner's decision. The Commissioner urges further that the evidence would not alter the ALJ's decision to discount Dr. Patel's opinions as it does not clarify or offer support for his opinions and it also would not alter the credibility analysis.

In short, the Commissioner argues that the additional evidence is not material in contemplation of either sentence four or six.  (Doc. 14 at 15-17).

The evidence at issue is appended to the Plaintiff's brief and consists of two letters by Plaintiff's counsel to Dr. Patel asking him to confirm statements by counsel in each letter.  *See* (Doc. 13-1).  In the first letter dated July 21, 2010, Dr. Patel confirms counsel's statement by checking the proposed answer which states, "Yes, the above analysis is correct in that the seizures that Mr. Jones is currently experiencing may not show up on an EEG, but are the result or the residual effects of the head trauma which I treated in 2001 causing cerebral irritability." *Id*. at 4-5.  In the second letter, dated August 25, 2010, Dr. Patel confirms counsel's statement by checking the proposed answer which states, "Yes, the best diagnosis of Mr. Jones' condition, based upon the symptomatology which he had described along with the failure to result in a positive EEG, would be a complex partial-seizure disorder." *Id*. at 6-7.  Additionally, there is literature concerning seizures and head injuries from an unspecified source and additional literature from the web site Epilepsy.com. *Id.* at 8-12.

Section 405(g) of Title 42 authorizes a district court to remand an application for benefits to the Commissioner by two methods, commonly denominated as "sentence four remands" and "sentence six remands."  Each sentence "remedies a separate problem." *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  As that decision is pertinent to this claim, the Eleventh Circuit held that when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous under sentence four. *Id.* at 1262.  In

essence, the Appeals Council's denial of a request for review is part of the "final decision" of the Commissioner and is subject to judicial review. *Id.* at 1264. On the other hand, "[s]entence six of 42 U.S.C. section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time to the district court." *Ingram ,* 496 F.3d at 1267. Thus, under sentence six of 42 U.S.C. § 405(g), a court may remand a case to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). By this standard, to demonstrate that a remand for consideration of new evidence is appropriate, the Plaintiff must demonstrate that: (1) there is new, non-cumulative evidence; (2) the evidence is material, i.e., relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

After consideration of this evidence, I conclude that under either standard, the additional statements by Dr. Patel would make no difference to the decision to deny benefits. In the first submission, Dr. Patel merely confirms that the seizures Plaintiff was currently experiencing might not show up on EEG but do relate back to the head trauma in 2001. In the second, Dr. Patel offers that the best diagnosis for Plaintiff's symptomatology and lack of positive EEG would be complex partial-seizure disorder. Taken together, it appears that Dr. Patel is presenting a diagnosis for complex partial seizure disorder based on the lack of EEG

evidence and attempting to explain the negative EEG findings in Plaintiff's treatment history. The additional literature indicates that EEGs are a primary tool for diagnosing seizures. "EEGs show abnormality in over 80% of epileptic patients." (Doc. 13-1 at 8). But subclinical type seizures, such as complex partial seizures, are not found on EEGs even at the time of the event. *Id*. at 10. By my consideration, even assuming such evidence is new,[8] there is no reasonable possibility that such opinions would change the administrative result before the ALJ. While the consistent lack of positive EEG evidence in the record was noted by the ALJ and perhaps is explained by this diagnosis,[9] here the ALJ fully credited Plaintiff with a long-term seizure disorder, by whatever name, and looked at the severity of the condition on Plaintiff's functional capacity before determining from the whole of the record that he could do a level of light exertional work. The decision to reject Dr. Patel's RFC assessment, as noted above, was based on several considerations, not just the lack of positive EEG evidence. For example, the decision notes that CT scans revealed no abnormalities, clinical findings by other doctors did not match up with the extreme limitations imposed by Dr. Patel, and the doctor's own findings seriously undermined his assessment as well. In these circumstances, I cannot agree that the additional information was material under sentence six.

---

[8]Under sentence six, it is questionable that such information is truly new evidence. While it did not exist at the time of the ALJ's decision, Plaintiff makes no showing that it could not have been obtained prior to the administrative hearing or before the decision was filed. By his account, he had treated with this doctor as early as 2001 and as noted above, the ALJ held the record open for additional submissions by Dr. Patel, but none were made prior to decision.

[9]Plaintiff's description of the type seizures he experiences suggests they are in the nature of grand mal seizures based on this literature, although I make no finding on that at all.

While sentence four appears inapplicable where the information was not before the Appeals Council at the time of its decision, even it it was, for these same reasons, I cannot conclude that this information renders the denial of benefits erroneous under sentence four.

IV.

The court in no way seeks to diminish the significance of Plaintiff's seizure disorder. However, on the whole, the medical evidence shows that the condition is not as persistent and frequent as claimed or as functionally limiting. It appears treatable as well, and when Plaintiff is compliant with treatment, the condition improves. While he urges a number of errors, Plaintiff fails to demonstrate from the evidence that the RFC for a restricted range of light exertional work is unsupported or that he is incapable of sustained work by reason of his occasional seizures. For these reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
3rd day of January 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.


Copies furnished to:
The Honorable James S. Moody, Jr., United States District Judge
Counsel of Record